# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44148

H2O ENVIRONMENTAL INC., an Idaho Company,

Plaintiff-Appellant-Cross Respondent,

v.

PROIMTU MMI, LLC, a Nevada Company,

Defendant-Respondent-
Cross Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2017 Term

2017 Opinion No. 74

Filed: June 23, 2017

Karel Lehrman, Clerk

_____

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Timothy L. Hansen, District Judge.

The judgment of the district court is <u>vacated</u>.

Fisher Rainey Hudson, Boise, for appellant. Vaughn Fisher argued.

Fennemore Craig, P.C., Las Vegas, Nevada, for respondent. Brenoch R. Wirthlin argued.

_____

BRODY, Justice

This is a contract dispute involving whether personal jurisdiction is proper over an out-of-state defendant. It concerns two out-of-state companies, one of which, H2O Environmental, Inc. ("H2O"), is registered to do business in Idaho and maintains an office in Boise. H2O filed suit in Idaho against the other company, Proimtu MMI, LLC ("Proimtu"), alleging breach of contract and seeking reimbursement for the payment of employment taxes for Proimtu employees. Proimtu moved to dismiss for lack of personal jurisdiction and the district court granted the motion. We vacate and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Proimtu is a Nevada limited liability company that provides construction management services. H2O is a Nevada environmental services company that is registered to do business in

Idaho and has bases of operation in Boise, Idaho; Las Vegas, Nevada; Reno, Nevada; Phoenix, Arizona; and Salt Lake City, Utah.

Proimtu and H2O started doing business together in approximately October 2012, when they entered into a written agreement for the provision of services related to a construction project in Arizona. Proimtu hired H2O to manage the employment of construction laborers and do the wage reporting. That contract stated that Proimtu was an Arizona limited liability company, with its place of business in Phoenix, Arizona and that H2O is a Nevada company with its place of business in Chandler, Arizona. Two days before the contract was signed, H2O, at the request of Proimtu, provided a completed W-9 form, indicating that its business address was 6679 South Supply Way in Boise, Idaho. H2O also indicated that reimbursement checks should be sent to that address and that it would be using a Wells Fargo in Boise, Idaho, for processing workers' pay.

Around November 2012, the parties had a series of phone calls and emails that led to the formation of an oral contract for employment services related to the construction of a solar panel plant in Tonapah, Nevada. These phone calls and emails were between Proimtu and the Chief Financial Officer and Chief Executive Officer of H2O who work in Boise. H2O agreed to handle the hiring, compensation and Davis-Bacon wage reporting of the construction workers hired by Proimtu for the Tonapah project. Proimtu agreed to reimburse H2O for all costs arising from the employment of these workers.

In fulfillment of the oral contract, H2O provided pre-employment screening of potential employees selected by Proimtu, completed weekly Davis-Bacon wage reporting for the employees and provided weekly paychecks to the employees via direct deposit from a Boise bank. Proimtu emailed weekly wage information and instructions to H2O's CFO in Boise and mailed weekly reimbursement checks to Boise for reimbursement of these costs.

In May 2013, a United States Department of Labor investigation revealed that some of the Tonapah workers employed by Proimtu were misclassified, and thus were not receiving wages appropriate for participation on a government project. Reclassification required the payment of additional wages and employment taxes. In 2014, Proimtu's general contractor at the Tonapah site paid the additional wages and H2O paid the $28,832.21 due in employment taxes. Throughout the summer of 2014, H2O sought reimbursement for these additional taxes, but Proimtu did not respond to H2O's invoices. In April 2015, H2O filed suit in Idaho against

2

Proimtu to recover the employment taxes it had paid. Proimtu moved to dismiss for lack of personal jurisdiction. The district court granted the motion.

Thereafter, Proimtu filed a statement of costs, including a request for attorney's fees. H2O filed a motion to disallow costs and a motion to vacate the judgment, arguing that Proimtu's filing of the statement of costs was a general appearance and constituted voluntary submission to the jurisdiction of the court. The district court issued a written decision concluding that (1) Proimtu's filing of a statement of costs was not a general appearance and did not invoke the personal jurisdiction of the court, and (2) that Proimtu's statement of costs did not comply with the requirements of Idaho Rule of Civil Procedure 54(e). Accordingly, the court denied H2O's motion to vacate the judgment, but granted its motion to disallow costs. H2O appeals, alleging that the district court erred in granting Proimtu's motion to dismiss for personal jurisdiction and in refusing to vacate the judgment thereafter entered. Proimtu cross-appeals, alleging that the district court erred in granting H2O's motion to disallow costs.

## II. STANDARD OF REVIEW

Similar to a motion for summary judgment, in reviewing a district court's decision to dismiss for lack of personal jurisdiction, this Court views the evidence in the light most favorable to the non-movant and draws all reasonable inferences in favor of the non-moving party. *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 75, 803 P.2d 978, 981 (1990).

## III. ANALYSIS

**A.      The exercise of personal jurisdiction by Idaho courts over Proimtu does not violate the Due Process clause.**

H2O contends that Proimtu purposefully availed itself of Idaho jurisdiction because it knew it was conducting business with people who were based in Idaho. Proimtu knew this, H2O argues, because Proimtu sent weekly emails to H2O's CFO, who was based in Boise, and whose email signature block included an Idaho address. Proimtu also mailed weekly reimbursement checks to H2O at an Idaho address and received a completed W-9 form indicating that H2O's address was in Idaho. H2O argues that these facts, together with the phone calls made to Boise at the time of contract formation and the payments issued from H2O's Boise bank, are sufficient minimum contacts with the State of Idaho to allow Idaho courts to exercise jurisdiction over Proimtu without offending principles of due process.

The district court held, as indicated above, that these contacts were sufficient to constitute transacting business within the purview of Idaho's long-arm statute, but that they were not sufficient minimum contacts to allow the constitutional exercise of jurisdiction over Proimtu. We disagree.

"In order for an Idaho court to exert jurisdiction over an out-of-state defendant, two criteria must be met; the act giving rise to the cause of action must fall within the scope of our long-arm statute and the constitutional standards of due process must be met." *St. Alphonsus Reg'l Med. Ctr. v. Washington*, 123 Idaho 739, 742, 852 P.2d 491, 494 (1993).

Idaho's long-arm statute, Idaho Code section 5-514, provides, in pertinent part, for the jurisdiction of Idaho courts over

> [a]ny person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing if any of said acts:
> (a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof . . .

Idaho courts have traditionally afforded section 5-514 broad application. *Southern Idaho Pipe & Steel Co. v. Cal-Cut Pipe & Supply, Inc.*, 98 Idaho 495, 497, 567 P.2d 1246, 1248 (1977) ("The language of I.C. § 5-514(a) is broad. . . . [It] is remedial in nature and should be broadly construed"). However, "[t]he exercise of personal jurisdiction by the courts of this state over those who do any of the acts enumerated in I.C. § 5-514 extends only 'as to any cause of action arising from the doing of any of said acts.'" *Houghland Farms, Inc.*, 119 Idaho at 75, 803 P.2d at 981. Thus, it is specific, as opposed to general jurisdiction. *Id.*

For jurisdiction to be properly exercised, defendants must also be afforded due process protections pursuant to the Fourteenth Amendment of the United States Constitution. *Schneider v. Sverdsten Logging Co., Inc.*, 104 Idaho 210, 211, 657 P.2d 1078, 1079 (1983). Due process requires that, for personal jurisdiction to be properly exercised over an out-of-state defendant, the defendant must "have certain minimum contacts [with the forum state] such that the maintenance

4

of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "The relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the [defendant] corporation to defend the particular suit which is being brought there.'" *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *International Shoe Co.*, 326 U.S. at 317). "[I]t is essential . . . that there be some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Here, H2O challenges the court's conclusion that Proimtu's contacts with Idaho were insufficient under the Due Process clause of the United States Constitution. The district court's analysis focused on the actions of Proimtu (the defendant) and whether they gave "fair warning" to Proimtu that it was subjecting itself to jurisdiction in Idaho. It concluded that they did not.

H2O argues that Proimtu knew well in advance of performance of the contact that the essential services under the contract were going to be performed in Idaho, including pre-employment screening of potential employees, Davis-Bacon wage reporting and processing of employee wages. This argument is well taken.

The record indicates that Proimtu received documentation *at least four weeks prior* to entering into the oral contract with H2O that indicated that it would be conducting business with Proimtu from its Boise office. This documentation included a W-9 form with a Boise address for H2O, a form indicating that wages for Proimtu employees would be paid by H2O through the Boise branch of a national bank, and a request that Proimtu send reimbursement checks to H2O's Boise office for these wages. This was plenty of time in which Proimtu could decide whether it would rather conduct business elsewhere. But it did not. Instead, it engaged in a series of calls and emails with H2O executives in Boise to form the oral contract at issue here. Throughout the duration of the contract, weekly emails were sent to H2O executives in Boise with wage and employee information that H2O needed to fulfill its duties under the contract. All of the work H2O performed under the contract was performed in Idaho. Although Proimtu was contracting with a Nevada company for services related to employees at a Nevada site, Proimtu was apprised very early on that H2O would be completing its work under the contract from its Idaho office. By contracting with H2O after being notified of its presence in Idaho and its desire to perform contractual duties there, Proimtu purposefully availed itself of the benefits and protection of

5

Idaho laws. The exercise of personal jurisdiction by Idaho courts over Proimtu is thus constitutionally proper.

Because we have determined that the district court erred when it granted Proimtu's motion to dismiss for lack of jurisdiction, we need not reach the issue of whether the filing of the statement of costs constituted a general appearance.

**B.      No attorney fees on appeal.**

Proimtu seeks attorney fees on appeal pursuant to Idaho Code section 12-120. However, in light of our decision above, Proimtu is not the prevailing party. No attorney fees are awarded on appeal.

## IV. CONCLUSION

We vacate the judgment of the district court and remand for further proceedings consistent with this opinion. Costs to H2O.


Chief Justice BURDICK, and Justices EISMANN, JONES and HORTON CONCUR.

6