607 P.2d 434

**Robert W. McCAMMON, Claimant-Appellant,**

v.

**YELLOWSTONE COMPANY, INC., Employer, and Department of Employment, Defendants-Respondents.**

**No. 12875.**

Supreme Court of Idaho.

Feb. 29, 1980.

Stephen L. Beer of Beer & Cain, Boise, for claimant-appellant.

Larry C. Hunter of Moffatt, Thomas, Barrett & Blanton, for defendant-respondent Yellowstone Co., Inc.

David H. Leroy, Atty. Gen., R. Lavar Marsh, Roger B. Madsen, Deputy Attys. Gen., Boise, for defendant-respondent Dept. of Employment.

DONALDSON, Chief Justice.

This is an appeal from a decision of the Idaho Industrial Commission denying claimant-appellant's unemployment benefits. Claimant Robert W. McCammon filed for unemployment benefits on March 22, 1977. Originally he was declared eligible for benefits but his employer, Ossie Rhash, protested, requesting a redetermination. Redetermination was bypassed at the request of the Industrial Commission and the matter was forwarded as an appeal to the Appeals Examiner, who concluded that McCammon had voluntarily left his employment and was thus ineligible for unemployment benefits. Review of the appeal was held in October, 1977, which resulted in the decision of the Industrial Commission dated January 3, 1978, affirming the order of the Appeals Examiner for the Department of Employment and denying unemployment benefits to McCammon.

McCammon was employed as a field adjuster for Yellowstone Company, Inc., for approximately four years. On March 18, 1977, his manager Ossie Rhash informed him that his job would be terminated as of April 1, 1977. Reasons for the termination were McCammon's failure to dress properly for his job, failure to keep adequate records, failure to keep the company car clean and improper use of company time for personal matters. McCammon denied all of these allegations.

McCammon told Rhash that he would quit effective March 18, 1977 instead of waiting until April 1, giving as his reason the strained relations between the two men. Rhash consented to the early termination. Thereafter, McCammon filed for unemployment benefits which were denied by the Appeals Examiner on the basis of his conclusion that McCammon, who could have continued in his employment for two more weeks, had voluntarily quit without good cause.

On appeal we address the issue of whether the Industrial Commission's finding that McCammon voluntarily left his employment without good cause should deprive him of unemployment benefits for the period after he was fired. We note at the outset that McCammon, at oral argument, requested benefits for the period beginning April 1, 1977, the date he was fired, rather than from the period beginning March 20. We believe there is a significant distinction between an award of unemployment benefits that would begin on a claimant's effective date of termination rather than on the date claimant voluntarily resigned. For reasons discussed below we affirm the denial of benefits for the period of March 20 to March 31, 1977, but reverse the denial of benefits for the period beginning April 1 and remand for further proceedings.

The issue of whether a terminated employee is entitled to unemployment benefits after voluntarily leaving work prior to the effective termination date is one of first impression in Idaho; however, other jurisdictions have had an opportunity to address the issue and have allowed an employee who voluntarily left his employment a short time prior to an effective termination date to recover unemployment benefits for the period of involuntary unemployment. In *Department of Labor & Industry v. Unemployment Compensation Board of Review,* 133 Pa.Super. 518, 3 A.2d 211 (1938), the Pennsylvania Superior Court affirmed a decision of the Compensation Board which awarded unemployment benefits to a claimant whose job was terminated effective December 24, 1937, but who left work voluntarily on December 20.

In discussing the issue of whether claimant's leaving on December 20 constituted a voluntary departure which would deprive the claimant of benefits, the court reviewed the record and found that claimant's "leaving work under the circumstances did not cause the unemployment for which he claimed benefits." 3 A.2d at 215.

The court concluded its decision by noting:

"In our view of the case the claimant's employment was broken or severed as a result of the act of the employer in notifying him that he would be laid off on December 24, seven days later. His leaving was due to this positive act of the employer, which was never withdrawn or modified. *His leaving a few days in advance of the time fixed for his lay-off, with the employer's full assent, cannot be construed as 'voluntarily leaving work',* but only as anticipating by a few days, with the consent of the employer, the effective date of his dismissal. He did not leave the work of his own motion or accord, but in consequence of the action of the employer laying him off. His dismissal became effective as of December 24, 1937. . . ." (emphasis added) 3 A.2d at 215.

The Pennsylvania Superior Court was cited with approval by the Florida District Court of Appeals in *Johnston v. Florida Department of Commerce,* 340 So.2d 1229, 1231 (Fla.App.1976). There, an employee whose job was terminated with two weeks advance notice sought unemployment benefits after she had voluntarily quit prior to

the effective date of termination. Claimant's original application for benefits was denied on the basis that her voluntary termination prior to the effective notification date constituted quitting without good cause.

In quashing the order of the Industrial Relations Commission which had denied claimant unemployment benefits, the Florida court construed its unemployment statutes to mean that where an employer notifies its employee that his employment is being definitely terminated as of a given date, the employee has not voluntarily left his employment without good cause attributable to his employer if he chooses not to work all or part of the period between notification and the date of termination. 340 So.2d at 1230.

The court went on to distinguish the period of voluntary unemployment as that period during which the employee chooses not to work, and held that an employee is ineligible to receive benefits during that period. Unlike the period of voluntary unemployment,

"[T]he period of involuntary unemployment begins with the date which the employer designated as the termination date when it gave the employee notice. If the employee is otherwise eligible for unemployment compensation benefits, *his leaving work after he was given definite notice will not deprive him of those benefits during the period of involuntary unemployment.*" 340 So.2d at 1230. (emphasis added)

The court held the claimant eligible for the period of involuntary unemployment, even though it had a statute similar to Idaho's [1] which required that a claimant could only

renew her eligibility status by finding another job and earning ten times the weekly benefit amount.

We find the reasoning of both the Pennsylvania and Florida courts persuasive and likewise conclude that a claimant, who is otherwise eligible, should not be deprived of benefits for a period of involuntary unemployment, in this case, effective April 1, 1977. In so holding we note that the appeals examiner found that McCammon had voluntarily left his employment without good cause under I.C. § 72–1366(e),[2] without making a finding on whether the employer had cause to fire the employee or whether McCammon was discharged because of misconduct. This finding presents two problems, however.

First, it prevents McCammon from re-establishing his eligibility for benefits during the period of involuntary unemployment until he has first obtained bona fide work, earned wages in an amount at least eight times his weekly benefit amount, and then loses that job through no fault of his own. In the past, it has been intimated that the determination of a claimant's eligibility is not a one-time affair. *Luskin v. Department of Employment,* 100 Idaho 584, 586–587, 602 P.2d 947, 949–50 (1979) (Bakes, J., dissenting). Thus, a claimant may be ineligible for unemployment benefits one week and eligible the next.

We do not agree with the interpretation of the Idaho Employment Security statutes as given by the appeals examiner on the subject of a claimant's eligibility. If the purpose of the Act is to promote economic security and to provide benefits during periods of economic unemployment,[3] such pur-

1. In Idaho, the claimant may renew his or her eligibility under the provisions of I.C. § 72–1366(*I*). It provides:

"A benefit claimant who has been found ineligible for benefits under the provisions of subsections (c), (e) or (f) of this section may reestablish his eligibility by having obtained bona fide work and received wages therefor in an amount of at least eight (8) times his weekly benefit amount."

2. In Idaho, under I.C. § 72–1366(e), a claimant is allowed to receive unemployment benefits provided:

"His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment."

3. As stated in I.C. § 72–1302, the purpose of the Idaho Employment Security Act, and the public policy of this state is declared to be as follows:

pose is frustrated by a finding that, because an employee voluntarily left his employment prior to an effective firing date, that such leaving prevents the claimant from ever becoming eligible for benefits as of the date he became involuntarily unemployed. We do not so read the statutes and hereby declare that after an otherwise eligible employee has been fired but voluntarily terminates his employment prior to the effective firing date, his eligibility for receipt of unemployment benefits is not affected following the termination.

A second problem with the finding of the appeals examiner is that even if McCammon voluntarily left his work without good cause prior to the date he was fired, this finding still does not indicate the reason for the firing. Since such a reason might prevent McCammon from receiving unemployment benefits during the period of involuntary unemployment, we remand for determination of whether McCammon's employer had cause to terminate his employment.

The decisions of other jurisdictions which have ruled to the contrary are not persuasive. We therefore affirm that portion of the Industrial Commission's decision denying benefits from March 20 through March 31, 1977 on the basis that McCammon had voluntarily left his employment without good cause. I.C. § 72–1366(e). We reverse that portion of the decision denying benefits effective April 1, 1977, and remand for further proceedings consistent with the views of this Court. Costs to appellant.

SHEPARD, McFADDEN and BISTLINE, JJ., concur.

.BAKES, J., dissents without opinion.

"Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of national and state interest and concern which requires appropriate action to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance."