Barbara CARLSON, Appellant,

v.

JOB SERVICE NORTH DAKOTA and the United States Air Force, Appellees.

Civ. 11148.

Supreme Court of North Dakota.

July 30, 1986.

Duane Houdek, Legal Assistance of North Dakota, Bismarck, for appellant.

Sidney Hertz Fiergola, Asst. Atty. Gen., Bismarck, for appellees.

MESCHKE, Justice.

Barbara Carlson sought unemployment compensation, claiming that she quit her civilian secretarial job with the United States Air Force only because she was being discharged. After hearing, Job Service denied benefits, concluding that she "voluntarily left [her] most recent employment without good cause attributable to the employer." On appeal, the district court affirmed but we reverse. We hold that the agency finding, that "[s]he could have remained employed for an additional five weeks" until her discharge was effective, does not support denial of benefits.

In August 1984, after her employment as a secretary at Minot Air Force Base for seven years, Mrs. Carlson's supervisors, Lt. Col. Coe and Captain McQueeney, considered her performance poor and met with civilian personnel advisors to see what they could do about it. They were advised to write standards of performance, to inform Mrs. Carlson of the standards, to place her on probation for thirty days, and to counsel her during probation. Mrs. Carlson was placed on probation. Mrs. Carlson testified that she was told to follow written standards given to her or "the consequences could be bad."

After her probationary period, Mrs. Carlson asked Lt. Col. Coe about her performance, but he told her that he needed to consult with Captain McQueeney who was then on leave. A few days later, after Mrs. Carlson was tardy arriving at work, Lt. Col. Coe wrote a message for the absent Captain:

"Larry,

"Barb was late to work on Friday 14 Sept. She arrived at 0735. She gave me no excuse. You need to write another reprimand!

"I want you to *begin her removal process:*

"1) Cannot take dictation as required.

"2) Does not respond to the telephone in a timely manner, or w/ her name.

"3) Typing poor.

"4) Tardiness—

"5) Distribution sloppy.

"6) Does not keep Commanders calendar up to date." (Our emphasis.)

On September 19, 1984, Mrs. Carlson read the message which she discovered on the desk of one of the officers. Since both officers were then on leave, she went to civilian personnel advisors and expressed to them concern about losing her civil service rating and retirement benefits if dis-

charged. She asked and was told that no particular form of notice was required to resign. She resigned, stating:

"Personality conflict with supervisor, deteriorating working conditions, no communication. I enjoyed my work very much and would not have resigned if things hadn't become so bad."

At the hearing before the Job Service referee, an employee relations specialist of the civilian personnel office at Minot Air Force Base testified about discharge procedures. An unsatisfactory rating after a probationary period sets in motion procedures to discharge the employee. There is a 30 day notice period in which the employee has an opportunity to respond. "[A]t the end of 30 days if the decision is [still] to remove, then the employee is given the right to appeal that action to the merit system protection board," but apparently this right of appeal is available only after discharge.

The referee found:

"The commander of this section became dissatisfied with the claimant's work performance and had her put on probation during August 1984. In the middle of September 1984, the commander told the claimant's direct supervisor to begin her removal process. He listed six reasons why he wanted her discharged from her employment. The claimant saw a copy of the commander's directions to her supervisor about her removal, and she quit this employment. The removal process would have taken approximately five weeks to complete and, therefore, the claimant would have had an additional five weeks of employment."

And·concluded:

"There is nothing in the testimony to establish the employer did not follow the procedures for discharging an employee who they believed was no longer performing satisfactorily. It is understandable that the claimant was upset because of this decision. There is nothing in the record to indicate her supervisors were harassing her or making life unbearable for her. She could have remained employed for an additional five weeks. She elected to voluntarily leave this position; therefore, she is not entitled to benefits."

■ An unemployed· person who quits employment "voluntarily without good cause attributable to the employer" or who is "discharged for misconduct" is disqualified from unemployment compensation. § 52–06–02(1) and (2), N.D.C.C. Whether a person left employment "voluntarily". is a mixed question of fact and law, where the evidence must support findings of fact which, in turn, must sustain the conclusion of "voluntariness." Compare *State Hospital v. North Dakota Employment Security Bureau*, 239 N.W.2d 819 (N.D.1976), which held that whether an individual "voluntarily" left his employment was a question of law.

Mrs. Carlson argues that she quit her job instead of being discharged and so did not "voluntarily" quit. She cites decisions in other states holding that an employee, who quits before an imminent discharge, does not leave "voluntarily" and is entitled to unemployment compensation. *E.g., School District No. 20 v. Commissioner of Labor*, 208 Neb. 663, 305 N.W.2d 367 (1981); *Philadelphia Parent Child Center, Inc. v. Commonwealth Unemployment Compensation Board of Review*, 44 Pa.Commw. 452, 403 A.2d 1362 (Pa.Commw.Ct.1979).

Job Service emphasizes that Mrs. Carlson resigned rather than awaiting discharge, and argues that discharge was not certain because (1) the effective date of termination had not been set; (2) there was no final action on the recommendation for discharge; (3) Mrs. Carlson was at fault for not taking steps to preserve her ·employment; and (4) she "exercised a free-will choice to resign ... in the face of misconduct allegations." The argument of Job Service recognizes resignation is not always voluntary, as when the employee is told to resign or be fired, illustrated by *Philadelphia Parent Child Center, Inc.*, *supra*. But, Job Service argues for more finely drawn distinctions in the cases involving a resignation prior to imminent discharge.

Job Service submits that courts are split over whether a resignation after a notice of termination, but before the effective date of the termination, is considered voluntary. *Johnston v. Florida Department of Commerce,* 340 So.2d 1229 (Fla.Dist.Ct.App. 1976) and *McCammon v. Yellowstone Co., Inc.,* 100 Idaho 926, 607 P.2d 434 (1974) are cited as holding a quit before scheduled discharge does not disqualify for benefits, and *Berkowitz v. Levine,* 41 A.D.2d 791, 341 N.Y.S.2d 239 (1973) and *Ferguson v. Arizona Department of Economic Security,* 122 Ariz. 290, 594 P.2d 544 (Ariz.Ct. App.1979) are cited as holding a quit before scheduled discharge is disqualifying.

Job Service further argues that this case is more like another class of cases which do not allow benefits where no effective date for discharge was set and the leaving antic-ipates a possible, but not certain, dis-charge. *Manson v. Hartford Accident and Indemnity Group,* 50 A.D.2d 980, 376 N.Y.S.2d 40 (1975). However, *Manson* is not based on any distinction of certainty of the date of discharge, but expressly follows *Berkowitz v. Levine, supra,* that "leaving in anticipation of discharge is without good cause." 376 N.Y.S.2d at 41.

■ Mrs. Carlson had been on probation. Her ranking superior had unequivocally di-rected "begin her removal process." The hearing referee determined that "[t]he re-moval process would have taken approxi-mately five weeks to complete...." This finding makes it clear that her discharge was certain and that she quit before being fired. Therefore, we conclude that the fac-tual finding that Mrs. Carlson "could have remained employed for an additional five weeks" until discharge does not support the conclusion that she quit voluntarily.

It is not significant that the date of dis-charge was not yet set. The record does not show that anyone other than her super-vising officers had to make the decision. Her ranking supervisor had directed her removal. According to this record, only the 30 day notice and response period re-mained before final action.

■ Job Service argues that Mrs. Carl-son was at fault for not preserving her job and for failing to exhaust her internal rights. But, the only kind of fault that disqualifies a former employee from unem-ployment compensation is serious "miscon-duct." *Perske v. Job Service of North Dakota,* 336 N.W.2d 146 (N.D.1983). Job Service does not argue that her job failings were serious "misconduct" which disqual-ified her for benefits upon discharge. In-sufficient job performance alone is not the kind of serious "misconduct" that disquali-fies a discharged employee. *Perske, su-pra.* And, no purpose would be served by constructing a concept of "voluntariness" that requires continuation of the necessar-ily unpleasant atmosphere between a fired employee and a frustrated supervisor.

■ We join those courts which have held that an employee who resigns rather than awaiting certain discharge is not dis-qualified from unemployment compensa-tion. *School District No. 20 v. Commis-sioner of Labor, supra; Philadelphia Parent Child Center, Inc. v. Common-wealth Unemployment Compensation Board of Review, supra; Johnston v. Florida Department of Commerce, supra; McCammon v. Yellowstone Co., Inc., su-pra; Eason v. Gould,* 66 N.C.App. 260, 311 S.E.2d 372 (N.C.Ct.App.1984); *Elizabeth v. Caldwell,* 160 Ga.App. 549, 287 S.E.2d 590 (1981); and *Department of Labor and In-dustry v. Unemployment Compensation Board of Review,* 133 Pa.Super. 518, 3 A.2d 211 (1938).

■ However, Mrs. Carlson's resigna-tion does affect the starting date of her unemployment compensation. Generally, an employee who quits instead of waiting for discharge should receive benefits from the date the discharge would have taken place, unless the employer creates good cause for leaving at an earlier date. *John-ston v. Florida Department of Commerce, supra,* 340 So.2d at 1230; *Eason v. Gould, supra; Elizabeth v. Caldwell, supra;*

*McCammon v. Yellowstone Co., Inc., supra; Department of Labor and Industry v. Unemployment Compensation Board of Review, supra.* Job Service determined that "[s]he could have remained employed for an additional five weeks" after September 19, 1984. During that period, Mrs. Carlson was voluntarily unemployed without good cause and therefore, should be paid compensation only for unemployment after October 24, 1984.

We reverse and remand for proceedings consistent with this opinion.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.