SOUTH DAKOTA STOCKGROWERS
ASSOCIATION, INC., Appellant,

v.

Daniel HOLLOWAY and South Dakota
Department of Labor, Appellees.

No. 16363.

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 1989.

Decided April 12, 1989.

Dennis H. Hill of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for appellant.

Rodney C. Lefholz of Fousek, Lefholz and Mairose, Rapid City, for appellee Daniel Holloway.

Drew Johnson, Asst. Atty. Gen., Aberdeen, for appellee Dept. of Labor.

PER CURIAM.

The South Dakota Stockgrowers Association (Stockgrowers) appeals an award of unemployment insurance benefits to Daniel Holloway (Holloway) and the charging of

such benefits to its experience rating account. We affirm.

## FACTS

Stockgrowers operates under a contract with the South Dakota Brand Board to carry out the board's brand inspection program. Holloway was employed as Stockgrowers' chief brand inspector. In April 1987 the brand board advised Stockgrowers that it would not renew its contract if Holloway remained the chief brand inspector. Stockgrowers relayed the brand board's position to Holloway but emphasized that it was not discharging him because it believed that the matter could be worked out. Holloway tendered his resignation to Stockgrowers on April 9, 1987, but it was not acted upon or accepted.

Despite having tendered his resignation, Holloway remained employed with Stockgrowers. On July 8, 1987, Stockgrowers continued Holloway's employment on an "at will" basis. On September 9, 1987, Stockgrowers requested that the brand board reconsider its position regarding Holloway. The brand board refused to reconsider and on September 23, 1987, Stockgrowers advised Holloway that it had hired a new chief brand inspector. Stockgrowers asked Holloway to continue working until October 15, 1987, to help train the new inspector. Holloway refused, advising Stockgrowers that September 30, 1987, would be his last day of work.

Holloway filed a claim for unemployment insurance benefits on October 5, 1987. The claim was denied on the basis of a departmental finding that Holloway had voluntarily quit his employment without good cause. Holloway appealed the denial of benefits to a hearings examiner for the Department of Labor. Following a hearing, the hearings examiner reversed the denial of benefits concluding that Holloway was discharged by Stockgrowers under nondisqualifying circumstances.[1] The decision of the hearings examiner was affirmed by the Secretary of Labor and appealed to the circuit court. The circuit court adopted its own findings of fact and conclusions of law also finding that Holloway was discharged by Stockgrowers under nondisqualifying circumstances. The circuit court concluded that Holloway was entitled to benefits for the period beginning with what would have been the effective date of his discharge.

## ISSUE ONE

Did Holloway voluntarily quit his employment without good cause?

The unemployment insurance law provides for a disqualification from receiving benefits for claimants who voluntarily quit their employment without good cause. SDCL 61–6–13. Additionally, an employer's unemployment insurance experience rating account is exempt from charge for benefits paid to a claimant who voluntarily quit his employment without good cause. SDCL 61–5–29. Citing these provisions, Stockgrowers contends that Holloway voluntarily quit his employment without good cause and should, therefore, be disqualified from receiving unemployment insurance benefits. Stockgrowers also asserts that due to Holloway's voluntary separation its experience rating account is exempt from charge for benefits paid to Holloway.

■ Stockgrowers relies strongly on Holloway's April 9, 1987, resignation as supporting its position that he voluntarily quit. However, both the hearings examiner and the circuit court focused on the events of September 23, 1987, as actually precipitating Holloway's separation. Both the hearings examiner and the circuit court found that Holloway's choice to resign rather than to continue his employment until his termination date of October 15[2] constituted a discharge rather than a vol-

---

1. However, Holloway was found ineligible for benefits for the time period between his resignation and what would have been the effective date of his discharge.

2. There was some testimony to the effect that Holloway could have continued working in an alternate position after October 15. However, this testimony was extremely vague and it does not appear that a definite offer of continued employment after October 15 was ever extended to Holloway.

untary quit under the unemployment insurance law. Thus the central issue is whether quitting employment after notice of discharge but prior to the effective date of the discharge is a discharge or a voluntary quit under the unemployment insurance law. This is a mixed question of law and fact which this court reviews de novo. *Permann v. Dept. of Labor, Umemp. Ins. D.,* 411 N.W.2d 113 (S.D.1987). *See also Carlson v. Job Service of North Dakota,* 391 N.W.2d 643 (N.D.1986).

■ Although Stockgrowers cites some authority[3] for the proposition that quitting a job prior to the effective date of a discharge is a voluntary quit, it appears that the majority rule under the unemployment insurance law is to treat such a separation as a discharge. *Johnston v. Florida Dept. of Commerce,* 340 So.2d 1229 (Fla.Dist.Ct. App.1976); *Elizabeth v. Caldwell,* 160 Ga. App. 549, 287 S.E.2d 590 (1981); *McCammon v. Yellowstone Co., Inc.,* 100 Idaho 926, 607 P.2d 434 (1980); *School Dist. No. 20 v. Com'r of Labor,* 208 Neb. 663, 305 N.W.2d 367 (1981); *Poteat v. Employment Sec. Com'n of N.C.,* 319 N.C. 201, 353 S.E.2d 219 (1987); *Carlson, supra; Phil. Parent Child Ctr. v. Com., Unemploy. Comp. Bd., Etc.,* 44 Pa.Commw. 452, 403 A.2d 1362 (1979). In these jurisdictions the claimant is merely disqualified from receiving benefits for the time period between his resignation and what would have been the effective date of his discharge (the rule followed by the hearings examiner and the circuit court in this case). *Johnston, supra; Elizabeth, supra; McCammon, supra; Poteat, supra; Carlson, supra.*

The reasoning in support of this rule is provided by the Florida District Court of Appeals in *Johnston,* 340 So.2d at 1230:

[W]here an employer notifies its employee that his or her employment is being definitely terminated as of a given date, the employee has not "voluntarily left his employment without good cause attributable to his employer" if he or she chooses not to work during all or part of the period between notification and the date given by the employer as the date of termination. In such a situation the employer has fired the employee; the employee has not discharged himself, but rather, being faced with the inevitable, has decided to leave before what might be called the notice period is up. In a case of that kind, the period of voluntary unemployment is that portion of the notice period (the notice period being the time, if any, between notice of discharge and actual discharge) during which the employee chooses not to work. The employee is ineligible to receive unemployment benefits during the notice period, for he could continue on the job if he wished. The period of involuntary unemployment begins with the date which the employer designated as the termination date when it gave the employee notice. If the employee is otherwise eligible for unemployment compensation benefits, his leaving work after he was given definite notice will not deprive him of those benefits during the period of involuntary unemployment.

■ Applying these rules to the facts of the instant case, we find that Holloway was discharged and did not voluntarily quit his employment. The sole reason for Holloway's separation was the fact that Stockgrowers would lose its contract with the brand board if Holloway remained chief brand inspector. It was only after Stockgrowers advised Holloway that his replacement had been hired that Holloway took affirmative steps to sever the employment relationship. Although Holloway could have continued working until October 15, training his replacement, he chose not to take this course. Based upon our previous discussion, we find that this does not make his discharge a voluntary quit and does not defeat his entitlement to unemployment

**3.** *Ferguson v. Arizona Department of Economic Sec.,* 122 Ariz. 290, 594 P.2d 544 (Ariz.Ct.App. 1979); *Carswell v. Share House, Inc.,* 151 Mich. App. 392, 390 N.W.2d 252 (1986); *Frost v. Levine,* 52 A.D.2d 998, 383 N.Y.S.2d 446 (1976); *Mastro v. Levine,* 52 A.D.2d 708, 382 N.Y.S.2d 589 (1976); *Manson v. Hartford Accident and Indemnity Group,* 50 A.D.2d 980, 376 N.Y.S.2d 40 (1975); *McEvilley v. Levine,* 49 A.D.2d 774, 372 N.Y.S.2d 250 (1975); *Berkowitz v. Levine,* 41 A.D.2d 791, 341 N.Y.S.2d 239 (1973).

benefits after October 15. Although Stockgrowers has expressed that it does not care if Holloway receives benefits so long as its experience rating account is not charged, the two go hand in hand. Holloway was discharged under nondisqualifying circumstances and accordingly, Stockgrowers' experience rating account must be charged for the benefits paid to Holloway. SDCL 61–5–29.

### ISSUE TWO

Was Holloway discharged for misconduct connected with his work?

As an alternative argument, Stockgrowers contends that Holloway was discharged for misconduct for failure to train his replacement. The unemployment insurance law does provide for a disqualification from receiving unemployment insurance benefits for individuals discharged from their employment for misconduct connected with their work. SDCL 61–6–14. Additionally, an employer's experience rating account is exempt from charge for unemployment benefits paid to former employees who were discharged for work connected misconduct. SDCL 61–5–29.

As support for its contention that Holloway was discharged for misconduct, Stockgrowers cites *Kienast v. Sioux Valley Co-op*, 371 N.W.2d 337 (S.D.1985). In *Kienast*, this court held that an employee's failure to train a fellow employee constitutes a substantial disregard of the employer's interests and is, therefore, work connected misconduct under the unemployment insurance law. *See*, SDCL 61–6–14.1(2).

The facts of *Kienast* are, however, distinguishable from the present case. Kienast's failure to train a co-employee was clearly one of two precipitating events leading to her discharge. In this case, Holloway's refusal to train a co-employee *followed* his discharge due to the demands of the brand board. Accordingly, Holloway's refusal to train his replacement cannot be relied upon as misconduct leading to his discharge. Therefore, the refusal does not support Holloway's disqualification from receipt of unemployment benefits or relieve Stockgrowers from the charging of such benefits to its experience rating account.

Affirmed.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., disqualified.