21 P.3d 903

Mary M. MASON, Claimant–Respondent,

v.

DONNELLY CLUB, Employer–
Respondent,

and

State of Idaho, Department of Labor,
Respondent–Appellant.

No. 25768.

Supreme Court of Idaho,
Boise, January 2001 Term.

March 29, 2001.

Hon. Alan G. Lance, Attorney General; Evelyn Thomas, Deputy Attorney General, Boise, for appellant.

Respondents did not participate in this appeal.

TROUT, Chief Justice.

This is an appeal from the Industrial Commission (Commission) holding claimant Mary M. Mason eligible for benefits where Mason gave notice of resignation but was discharged immediately thereafter based on the notice of resignation and not for employee misconduct.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Mason began working at the Donnelly Club in 1990 as a permanent full-time bartender. In March 1998 the Donnelly Club (employer) was purchased and taken over by a new owner. On April 27, 1998 Mason wrote on the employer's calendar her name and two weeks notice of her intent to quit. The following day, the employer called Mason at home. Mason indicated she was going to work with her husband and was told she should not return to work during her two-week notice period because she had been replaced.

Mason filed a claim for unemployment insurance benefits on May 7, 1998. In her claim, Mason indicated her reason for leaving was that she "could not get along with new owner."

A Department of Labor (Department) claims examiner issued two benefit eligibility determinations on the claim. One determination held Mason eligible for benefits for the period between April 26, 1998 and May 3,

1998 because she was discharged, but not for misconduct. The other determination held her ineligible for benefits effective May 4, 1998, the effective date of her resignation, because she left her employment voluntarily without good cause connected with her employment. The examiner issued the ruling based on what the examiner considered to be a "*McCammon* separation."

Mason appealed. After a telephone hearing an appeals examiner affirmed the eligibility determination and Mason again appealed. The Commission reversed the decision of the appeals examiner. The Commission considered only the Employer's discharge, not Mason's effective resignation date, in determining Mason's eligibility for unemployment benefits. Specifically, the Commission reasoned that by dismissing her after receiving notice of her resignation, the employer rejected the resignation and discharged her instead. The Commission held the only basis for Mason's discharge was her notice of resignation; therefore, she was discharged for reasons other than misconduct and was eligible for benefits effective April 26, 1998. The Department filed a motion for reconsideration asking the Commission to apply the provisions of IDAPA 09.01.30.476.30 and the *McCammon* case. The Commission denied the motion to reconsider. The Department appeals to this Court.

## II.

### STANDARD OF REVIEW

 The Idaho Constitution limits this Court's review of the Industrial Commission's decisions to questions of law. Idaho Const. Art. V. § 9. If this Court determines the Commission's findings of fact are supported by substantial and competent evidence in the record, the Court will not disturb those findings. *Alexander v. Harcon, Inc.*, 133 Idaho 785, 787, 992 P.2d 780, 782 (citing *Hamilton v. Ted Beamis Logging and Const.*, 127 Idaho 221, 223, 899 P.2d 434, 436 (1995); *Hutchinson v. J.R. Simplot Co.*, 98 Idaho 346, 347, 563 P.2d 404, 405 (1977)). However, this Court exercises free review over the Commission's conclusions of law. *Id.* (citations omitted).

## III.

### DISCUSSION

*A. The Department's rule is reasonably related to the purposes of the Employment Security Law.*

 The first issue presented to this Court is whether IDAPA 09.01.30.476.03 conforms with the Employment Security Law and whether the rule is reasonably directed to the accomplishment of the principles of that law. It is fundamental that the judiciary has the ultimate responsibility to construe legislative language to determine the law. *J.R. Simplot Co. v. Tax Com'n*, 120 Idaho 849, 853, 820 P.2d 1206, 1210 (1991) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60, 73 (1803)) (citations omitted). This principle extends to our review of administrative rules, and it is this Court's responsibility to determine the validity of the rule. "[A]dministrative rules are invalid which do not carry into effect the legislature's intent as revealed by existing statutory law, and which are not reasonably related to the purposes of the enabling legislation." *Holly Care Center v. State, Dept. of Employment*, 110 Idaho 76, 78, 714 P.2d 45, 47 (1986) (citations omitted). This Court has established a four-prong test for determining the appropriate level of deference to be given to an agency construction of a statute. *J.R. Simplot Co. v. Tax Com'n*, 120 Idaho 849, 820 P.2d 1206 (1991). First, we must determine if the agency has been entrusted with the responsibility to administer the statute at issue. *Id.* at 862, 820 P.2d at 1219. Second, the agency's statutory construction must be reasonable. *Id.* Third, we must determine whether the statutory language at issue does not expressly treat the precise question at issue. *Id.* Finally, we must ask whether any of the rationales underlying the rule of deference are present. *Id.* If the four-prong test is met, then courts must give "considerable weight" to the agency's interpretation of the statute. *Id.*

The Department has clear authority to administer and promulgate the rules under the Employment Security Law. *See* I.C. §§ 72–

1331 and 72–1333. Therefore, the first prong of the test is met.

The second prong is also met. Pursuant to their authority, the Department enacted IDAPA 09.01.30.476.03 [1], which states:

**When Notice of Resignation Prompts a Discharge.** Where a claimant had given notice of appending resignation, but was discharged before the effective date of the resignation, both "separations" must be considered. The following three elements should be present:

a. The employee must have given notice to the employer of a specific separation date;

b. The employer's decision to discharge before the effective date of the resignation must be a consequence of the pending separation; and

c. The discharge must occur a short time prior to the effective resignation.

IDAPA 09.01.30.476.03 was prompted by this Court's decision in *McCammon v. Yellowstone Co.*, 100 Idaho 926, 607 P.2d 434 (1980). In *McCammon*, an employee was given two weeks notice of his termination. *Id.* at 927, 607 P.2d at 435. Instead of waiting until the termination date, the employee quit voluntarily. This Court found that both separations—the date of resignation and the firing date—should be considered to determine whether an employee is entitled to unemployment benefits after voluntarily leaving work prior to the effective termination date. *Id.* at 927, 607 P.2d at 436. This determination was based on other jurisdictions which distinguish between periods of voluntary and involuntary unemployment and on Idaho precedent recognizing "the determination of a claimant's eligibility is not a one-time affair." *Id.* at 927–28, 607 P.2d at 435–36. Our holding in *McCammon* is directly reflected in IDAPA 09.01.30.331.07 [2] and the converse situation in IDAPA 09.01.30.476.03, discussed above. The two rules, based directly on precedent of this Court, are a reasonable construction of the statute.

Furthermore, the IDAPA rule comports with the purposes of the Employment Security Law. The intent of the Employment Security Law is to alleviate problems related to insecurity due to unemployment. Specifically, the Employment Security Law "addresses this problem by encouraging employers to offer stable employment" and establishes a system to "set[ ] aside unemployment reserves to be used for workers who are unemployed through no fault of their own." I.C. § 72–1302. The disqualifying factors for denial of benefits require that "the claimant's unemployment is not due to the fact that he left his employment voluntarily without good cause connected with his employment, or that he was discharged for misconduct in connection with his employment." I.C. § 72–1366(5). Applying *McCammon* to the converse situation conforms to this intent. IDAPA 09.01.30.476.03 provides that both separations are to be considered and if there is a period of voluntary unemployment, absent good cause, benefits should be denied. In addition, benefits would be allowed for the period of involuntary unemployment, so long as the discharge was based solely on the resignation and was not due to misconduct.

The Commission, in the Order Denying Reconsideration, states that the "reverse analysis of *McCammon* would not necessarily enhance the purpose of the Employment Security Law", arguing:

By applying "double separation" analysis, this Commission would effectively discourage employees from providing notice of their pending resignations. Once notice of resignation is given, employers could discharge their workers prior to the effective date of resignation. As in this case, such a discharge would effectively exchange two weeks of the employee's full wages for two weeks of unemployment benefits. Two weeks of unemployment benefits are not the equivalent of two weeks of full wages, especially considering the waiting period

**1.** IDAPA 09.01.30.476.03 was insignificantly modified and renumbered at IDAPA 09.01.30.450.09 effective July 1, 1998, subsequent to Mason's termination and resignation.

**2.** IDAPA 09.01.30.331.07 was modified and renumbered as 09.01.30.275.05 effective July 1, 1998.

for benefits.... Furthermore, notice periods have several features that support the purpose of the Employment Security Law. First, they give employees the opportunity to work for full wages during the remaining term of their employment. Second, the employer benefits by not being left short-handed. Third, notice periods promote the orderly transition of new employees into the workplace.... And, fourth, the overly-burdened unemployment system is spared the expense of providing benefits to claimants who have voluntarily quit work provided by a particular employer. Although IDAPA 09.01.30.476.03 and this case present a situation where the employee resigned and was fired based on that resignation, what the Commission calls the "reverse" of *McCammon,* the rationale of *McCammon* is clearly applicable. *McCammon* recognized that the purposes of the Employment Security Law "to promote economic security and to provide benefits during periods of economic unemployment" would be frustrated by ignoring the distinction between the period of involuntary and voluntary unemployment. Similarly, the purposes of the Employment Security Law would be frustrated in this case by ignoring the periods of voluntary and involuntary unemployment and allowing over-burdensome claims such as this one, where even though Mason quit her job voluntarily, and had only a two-week period of involuntary unemployment, the Commission would nevertheless provide indefinite benefits. The rules promulgated by the Department strike a better balance of the goals underlying the Employment Security Law. These rules are a reasonable interpretation of I.C. §§ 72–1302 and 72–1366(5) by analyzing both periods of voluntary and involuntary unemployment, therefore providing benefits determinations based on the entirety of the employment relationship, not just the last act.

The third prong is also present because the statutory language of I.C. §§ 72–1302 and 72–1366(5) does not expressly treat the precise question at issue. These sections merely provide general guidance indicating benefits should not be paid for periods of voluntary unemployment, absent good cause, but will generally be paid for periods of involuntary unemployment, so long as they are not due to misconduct.

Finally, we must ask whether any of the rationales underlying the rule of deference are present. IDAPA 09.01.30.476.03 is a relatively recent rule with no specific evidence of legislative acquiescence. In addition, the rule is not particularly a result of agency expertise. However, the rule is a more practical interpretation of the statute than was asserted by the Commission. As noted in *J.R. Simplot Co.,* "[i]f one or more of the rationales underlying the rule are present, and no 'cogent reason' exists for denying the agency some deference, the court should afford 'considerable weight' to the agency's statutory interpretation." 120 Idaho at 862, 820 P.2d at 1219. Moreover, even if a court concludes the agency is "not entitled to receive considerable weight to its interpretation based on the lack of justifying rationales for deference, then the agency's interpretation will be left to its persuasive force." *Id.* at 862–63, 820 P.2d at 1219–20. Because IDAPA 09.01.30.476.03 is a more practical interpretation of I.C. §§ 72–1302 and 72–1366(5) and we are persuaded that benefits should be based on the totality of the employment relationship, not simply the last act ending employment, we find the fourth prong is also met.

IDAPA 09.01.30.476.03 is a reasonable interpretation of the Employment Security Law and gives effect to the intent of this law; therefore, we uphold the rule. Because IDAPA 09.01.30.476.03 is in conformance with the enabling statute, the rule, although not rising to the level of statutory law, has "the force and effect of law." *Mead v. Arnell,* 117 Idaho 660, 664, 791 P.2d 410, 414 (1990). The Commission, therefore, does not have the discretion to disregard the rule based on its own policy considerations.

## B. Construction and Application of IDAPA 09.01.30.476.03

The second issue raised on appeal is whether the Commission properly interpreted IDAPA 09.01.30.476.03 when it held the rule does not apply to the facts of this case. As noted above, IDAPA

09.01.30.476.03 provides three criteria to determine whether both resignation and discharge should be considered in making the eligibility determination:

a. The employee must have given notice to the employer of a specific separation date;

b. The employer's decision to discharge before the effective date of the resignation must be a consequence of the pending separation; and

c. The discharge must occur a short time prior to the effective resignation.

The Commission admits the first two criteria are met, but argues the third, that the "discharge must occur a short time prior to the effective resignation date", was not. The determination of whether or not two weeks is a "short time" under the rule is a question of law over which this Court exercises free review. *Struhs v. Protection Technologies, Inc.*, 133 Idaho 715, 718, 992 P.2d 164, 167 (1999)(citing *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996)).

Administrative regulations are subject to the same principles of statutory construction as statutes. *Rhodes v. Industrial Commission*, 125 Idaho 139, 142, 868 P.2d 467, 470 (1993). Interpretation of such a rule should begin, therefore, with an examination of the literal words of the rule. *Thomas v. Worthington*, 132 Idaho 825, 829, 979 P.2d 1183, 1187 (1999)(citing *State ex rel. Lisby v. Lisby*, 126 Idaho 776, 779, 890 P.2d 727, 730 (1995)). The language of the rule, like the language of a statute, should be given its plain, obvious and rational meaning. *Id.* In addition, this language should be construed in the context of the rule and statute as a whole, to give effect to the rule and to the statutory language the rule is meant to supplement. *Grand Canyon Dories v. Idaho State Tax Com'n*, 124 Idaho 1, 5, 855 P.2d 462, 466 (1993).

IDAPA rule 09.01.30.450.09(c) provides no definition of "short time." However, in the context of the Employment Security Law, benefits are provided for in compensable weeks, rather than by day. *See,* I.C. § 72-1312. In addition, the time period in *McCammon,* from which the rule is based, was a two-week notice of termination. 100 Idaho at 927, 607 P.2d at 435. Presumably, a two-week notice period would be the most

common time period under which these situations would arise. It is unreasonable to conclude the two "separations" would only be considered if the notice and dismissal happened in a time period less than two weeks, making the determination of voluntary and involuntary only for one compensable week. This interpretation would render the rule inapplicable in almost all cases.

Because we find unreasonable the Commission's interpretation that a two-week period is not a "short time" under the rule, we remand to the Commission to consider both separations under IDAPA 09.01.30.450.09 and to determine whether Mason resigned for good cause connected with her employment under I.C. § 72-1366(5).

### IV.

### CONCLUSION

The Commission's grant of benefits for the period after May 4, 1998—Mason's resignation date—is reversed. This case is remanded to the Commission to determine eligibility for unemployment benefits based on both periods of separation consistent with I.C. § 72-1366(5) and IDAPA 09.01.30.476.03 as interpreted by this Court. Given the result, we do not award costs or fees.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.