# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38780

| | | |
|---|---|---|
| STATE OF IDAHO by and through LAWRENCE G. WASDEN, Attorney General, and the IDAHO STATE TAX COMMISSION, | ) ) ) ) | Boise, December 2012 Term |
| | ) | 2013 Opinion No. 105 |
| | ) | Filed: October 15, 2013 |
| Plaintiffs-Respondents, | ) ) | |
| | ) | Stephen Kenyon, Clerk |
| v. | ) ) | |
| | ) | SUBSTITUTE OPINION, THE |
| NATIVE WHOLESALE SUPPLY | ) | COURT'S PRIOR OPINION |
| COMPANY, a corporation, | ) ) | DATED AUGUST 16, 2013 IS HEREBY WITHDRAWN. |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Timothy Hansen, District Judge.

The judgment of the district court is <u>affirmed</u> in part, <u>reversed</u> in part, and <u>remanded</u> to the district court for further proceedings consistent with this opinion.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered, Boise, for appellant. Samuel A. Diddle argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondents. Brett T. DeLange argued.

---

HORTON, Justice.

This appeal arises from Native Wholesale Supply Company's (NWS) cigarette sales to Warpath, Inc. NWS is an Indian retailer organized under the tribal laws of the Sac and Fox Nation. It operates on the Seneca reservation in New York. Warpath is an Idaho corporation that operates on the Coeur d'Alene reservation. The State of Idaho brought suit against NWS for acting as a cigarette wholesaler without a permit and for selling cigarettes that are unlawful for sale in Idaho. The district court enjoined NWS from selling wholesale cigarettes in Idaho without a wholesale permit and assessed civil penalties in the amount of $214,200. NWS appealed that decision, arguing the State did not have subject matter jurisdiction or personal jurisdiction. We

1

affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Idaho law requires any entity importing cigarettes into the state to obtain a wholesale permit. Furthermore, only cigarettes manufactured by companies that comply with the Master Settlement Agreement Act (MSAA), and the Complementary Act may be sold in Idaho. I.C. § 39-8403(3). The MSAA and Complementary Act were enacted to put the cost of tobacco-related healthcare on the tobacco manufacturers doing business in Idaho. To do that, the MSAA requires tobacco manufacturers to either join the tobacco Master Settlement Agreement or establish a qualified escrow account and deposit into escrow a statutorily prescribed amount "per unit sold," a term defined by the MSAA. *See State, ex rel. Wasden v. Maybee*, 148 Idaho 520, 529, 224 P.3d 1109, 1118 (2010). The Complementary Act requires every tobacco manufacturer that sells cigarettes in Idaho to annually certify compliance with the requirements of the MSAA. The State of Idaho maintains a registry of such compliant manufacturers. It is unlawful to sell cigarettes from a non-compliant manufacturer within the state of Idaho.

Beginning in 2004, NWS sold over 100 million cigarettes wholesale to Warpath. NWS is a corporation organized under the tribal code of the Sac and Fox Nation. However, it is owned by a member of the Seneca tribe and is operated on the Seneca reservation. Warpath is an Idaho corporation owned by a member of the Coeur d'Alene tribe, and is operated solely on the Coeur d'Alene reservation. NWS purchased cigarettes manufactured in Canada. These were then stored in a foreign trade zone in Nevada. The cigarettes were then shipped from Nevada to the Coeur d'Alene reservation. NWS has never held a wholesale permit. All the cigarettes it sold to Warpath were either Opal or Seneca brand, both of which are produced by a manufacturer that was non-compliant at all times relevant to this litigation.

The State brought suit against NWS seeking a permanent injunction and civil penalties. NWS moved to dismiss the case for lack of subject matter jurisdiction and personal jurisdiction. NWS argued that because it was owned solely by a member of the Seneca tribe, was operated on the Seneca reservation, and its only business in Idaho was with a tribal-owned retailer on the Coeur d'Alene reservation, Idaho courts did not have jurisdiction. Its motion was denied. The State was granted a preliminary injunction prohibiting NWS from selling non-compliant cigarettes in Idaho. The State then moved for, and was granted, summary judgment. The State

was granted a permanent injunction based upon I.C. § 48-606(1)(b) (the Idaho Consumer Protection Act) and I.C. § 63-2519 (relating to taxation of cigarettes) and was awarded $214,200 in civil penalties for NWS's sale of non-compliant cigarettes, a violation of the Complementary Act. The injunction prohibits NWS from selling non-compliant cigarettes and from acting as a wholesaler in Idaho without first obtaining a valid wholesaler permit.

## II. STANDARD OF REVIEW

This Court reviews an appeal from summary judgment using the same standard employed by the trial court; namely, summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Doe v. City of Elk River*, 144 Idaho 337, 338, 160 P.3d 1272, 1273 (2007); I.R.C.P. 56(c). This Court exercises free review regarding whether the prevailing party was entitled to judgment. *Andersen v. Prof'l Escrow Servs., Inc.*, 141 Idaho 743, 745-46, 118 P.3d 75, 77-78 (2005). This Court also exercises free review over questions of jurisdiction. *State v. Doe*, 147 Idaho 326, 327, 208 P.3d 730, 731 (2009).

In *Intermountain Bus. Forms, Inc. v. Shepard Bus. Forms Co.*, 96 Idaho 538, 531 P.2d 1183 (1975), this Court discussed the standard we employ when reviewing a district court's decision on a motion to dismiss in which all evidence has been submitted by way of affidavit. We considered the "evidentiary presumptions" that "should apply to appellate review of the factual questions presented by the conflicting affidavits in a motion to dismiss for lack of personal jurisdiction." *Id*. at 540, 531 P.2d at 1185.

> On appellate review of involuntary dismissal at the close of plaintiff's proof in a jury case, this court has held that the evidence introduced must be viewed "in the light most favorable to the plaintiffs, and the plaintiffs are entitled to all reasonable inferences which can be drawn from facts established by their case in chief." *Blackburn v. Boise School Bus Co.,* 95 Idaho 323, 325, 508 P.2d 553, 555 (1973).
>
> "* * * On appeal from an order granting summary judgment, this court must construe the evidence presented to the district court liberally in favor of the party opposing the order and accord [that party] 'the benefit of all inferences which might be reasonably drawn.' " *Straley v. Idaho Nuclear Corp.,* 94 Idaho 917, 918, 500 P.2d 218, 220 (1972). *Accord, Fairchild v. Olsen,* 96 Idaho 338, 528 P.2d 900 (1974).
>
> These same presumptions should apply to appellate review of the factual questions presented by the conflicting affidavits in a motion to dismiss for lack of personal jurisdiction.

*Id. See also, Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 74-75, 803 P.2d 978, 980-81 (1990).

### III. ANALYSIS

There are two distinct issues in this case; first, whether the State can require NWS to obtain a wholesaler permit under Idaho Code § 63-2503, and second, whether the State can regulate the importation of cigarettes onto a reservation located within Idaho's borders. We address these in turn.

### A. NWS is not required to obtain a wholesaler permit for its sales to Warpath.

The State argues that I.C. § 63-2503 requires all cigarette wholesalers to obtain a wholesaler permit before operating in the state of Idaho. That section states, "It shall be unlawful for a person to act as a wholesaler of cigarettes without a permit." I.C. § 63-2503(1).[1] However, "[a] permit shall be held only by persons actively engaged in making wholesale sales of cigarettes subject to tax under this chapter." I.C. § 63-2503(3). Thus, a wholesaler permit is only required for those acting as a wholesaler of cigarettes that are subject to Idaho taxes. The Idaho Administrative Code provides that a wholesaler may deliver cigarettes without a tax stamp to an Indian reservation when "[t]he purchaser is a business enterprise wholly owned and operated by an enrolled member or members of an Idaho Indian tribe." IDAPA 35.01.10.014. Having analyzed the language of the statute and the administrative rule along with the four-prong analysis outlined in *Mason v. Donnelly Club*, 135 Idaho 581, 583, 21 P.3d 903, 905 (2001), we find no "cogent reason exists for denying the agency some deference . . ." in its construction of the statute in adopting this regulation. *Id*. at 585, 21 P.3d at 907. Therefore, any cigarette sales made to a business owned by a tribal member are exempt from tax, and thus exempt from the requirement to obtain a wholesaler permit.

In this case, NWS's only wholesale sales within the state of Idaho were to Warpath. Warpath is owned and operated by a member of the Coeur d'Alene tribe. As a result, NWS's sales to Warpath were not subject to tax, and were thus exempt from the wholesaler permit requirement. Because NWS made no other sales within Idaho, there was no requirement that it obtain a wholesaler permit. In fact, the statute prohibits an entity from obtaining a wholesaler

---

[1] The statute was amended this past legislative session, effective July 1, 2013, deleting the words "subject to tax under this chapter" from I.C. § 63-2503(3). We do not address the effect of this amendment.

permit unless it is actively engaged in wholesale sales subject to tax. So, not only was NWS not required to obtain a wholesaler permit, it was statutorily prohibited from doing so.

The district court's permanent injunction prohibits NWS from "[e]ngaging in business as a wholesaler of cigarettes . . . without first applying for and possessing a valid permit as required by Idaho Code Section 63-2503(1) of Idaho's cigarette tax laws." This language is inconsistent with the statute and the applicable administrative regulations. Thus, we reverse the district court's order and remand with instructions to remove the language from the injunction requiring NWS to obtain a wholesaler permit.

**B. The State can regulate the importation of cigarettes onto reservations located in Idaho.**

NWS argues that because it is owned by a tribal member and it operates on an Indian reservation, the State lacks subject matter jurisdiction to regulate its transactions with Warpath. "Subject matter jurisdiction is the power to determine cases over a general type or class of dispute." *Bach v. Miller*, 144 Idaho 142, 145, 158 P.3d 305, 308 (2007). This Court has previously declared that the United States Congress "has plenary power over affairs arising within Indian country, unless it has provided otherwise and unless the state has correspondingly assumed such jurisdiction." *State v. George*, 127 Idaho 693, 695-96, 905 P.2d 626, 628-29 (1995) (citing *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164, 170–71 (1973)). When a state is attempting to regulate a tribe or a member of that tribe inside Indian Country, express congressional authorization is required. *See Oklahoma Tax Comm'n. v. Chickasaw Nation*, 515 U.S. 450, 458 (1995). However, that express authorization is not required when the regulated party is not a tribe or tribal member.

NWS argues that it is an Indian for purposes of state regulation because it is owned by a member of the Seneca tribe and it was organized under the laws of the Sac and Fox Nation. It argues that this Court's decision in *Mahoney v. State Tax Comm'n* requires this Court to treat an Indian-owned business the same as a tribal member. In *Mahoney*, the State was attempting to enforce a tax on cigarette sales that took place on the Coeur d'Alene reservation. 96 Idaho 59, 61, 524 P.2d 187, 189 (1973). The business was owned by a tribal member but was not affiliated with the tribe or connected in any way with tribal business. *Id*. However, this Court made no distinction between tribal members and their businesses, stating that the case involved "a state's attempt to tax on-reservation sales consummated by Indian sellers . . . ." *Id*. at 61-62, 524 P.2d at 189-90. That case identified the business as a private enterprise, and made clear that the sales

were to Mr. Mahoney himself, a member of the tribe. The tax was therefore invalidated because the sales were to an individual tribal member. However, the same analysis does not apply when a corporation is the regulated entity. A "corporation is not an Indian for purposes of immunity from state taxation." *Baraga Products, Inc. v. Comm'r of Revenue*, 971 F. Supp. 294, 298 (W.D. Mich. 1997) *aff'd sub nom. Baraga Products, Inc. v. Michigan Comm'r of Revenue*, 156 F.3d 1228 (6th Cir. 1998). A corporation is a legal entity organized under state law, and taxing a corporation is not the same as taxing its sole shareholder. *Id*. at 297. That distinction does not exist when the entity is not a corporation but is merely a sole proprietorship. *Id*. In the case of a sole proprietorship, the owner pays the taxes because the sole proprietorship is not a legal entity. *Id*. *Baraga Products* went on to state:

> It is possible that a corporation owned by Indian shareholders might be immune from state taxation if it is acting as an equivalent to the Indian tribe itself. For example, a corporation has been held to be entitled to the same sovereign immunity as the Indian Tribe when it is organized under tribal laws; it is controlled by the Tribe; and it is operated for government purposes.

*Id*. (citing *Cohen v. Little Six, Inc.*, 543 N.W.2d 376, 379 (Minn. App. 1996); *Dixon v. Picopa Constr. Co.*, 772 P.2d 1104, 1109–11 (Ariz. 1989)). Thus, taxing an Indian-owned corporation organized under state law would not normally be considered a direct tax on an Indian tribe or its members.

In this case, NWS is a corporation organized under the tribal laws of the Sac and Fox tribe and is owned solely by a member of the Seneca tribe. However, there is no indication that the corporation is acting as a surrogate for the tribe itself. There is nothing to suggest that it is controlled by the tribe or operated for tribal governmental purposes. The fact that NWS is operated on a different reservation than the one under which it is organized suggests that it is not connected to tribal business. Thus, we hold that, as a corporation, NWS is not an Indian. Unlike in *Mahoney*, the State in this case is attempting to regulate the importation of cigarettes into Idaho by a corporation, rather than the sale of cigarettes to a member of an Indian tribe. Because NWS is not an Indian, the State's attempt to regulate NWS is not categorically barred.

NWS argues that even if it is found not to be an Indian, the Indian Commerce Clause prevents the State from regulating its transactions with Warpath because it is selling cigarettes strictly to a reservation-based retailer. When a state desires to regulate non-Indians inside Indian Country, the U.S. Supreme Court has employed a balancing test to determine whether the state's

6

authority has been preempted by federal law. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145 (1980).

> The cases that the Supreme Court has deemed the most difficult are those in which a state seeks to regulate the activities of a non-Indian engaging in activities upon a reservation; in that instance the Court employs a "particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law."

*State, ex rel. Wasden v. Maybee*, 148 Idaho 520, 534, 224 P.3d 1109, 1123 (2010) (quoting *Bracker*, 448 U.S. at 145). This balancing test only applies when the regulated conduct occurs on a reservation. This Court has framed the analysis by stating:

> In determining how to analyze any state statute that allegedly is in conflict with the Indian Commerce Clause, it is crucial to determine, as a preliminary inquiry: (1) whether the regulated conduct occurs on or off a reservation; (2) whether or not the party being regulated is a tribal member; and (3) if the conduct being regulated does occur on a reservation, whether State interests outside the reservation are implicated.

*Id*. Thus, the preliminary inquiry is whether the activity occurs on or off reservation. The district court determined that NWS's activities occurred off reservation and the *Bracker* balancing test was not applicable. We agree.

"Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State." *Id*. (quoting *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148-49 (1973)). In other words, whether a member of a tribe or not, when a person operates outside of reservation boundaries, the *Bracker* test does not apply. For this reason, tribal members operating outside reservation boundaries have been subject to state regulation. *See Organized Vill. of Kake v. Egan*, 369 U.S. 60, 61 (1962) (native community with no reservation lands was subject to state conservation regulations); *Mescalero Apache Tribe*, 411 U.S. at 148 (state could tax Indian-operated ski resort that was located off reservation); *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95, 115 (2005) (state could impose tax on motor fuel sold by non-Indian distributor to on-reservation retailer where delivery happened off reservation).

Thus, the location of the activity can be an important factor in analyzing state regulation where Indian commerce is implicated. Here, however, the activity is not occurring strictly on the reservation. We decline NWS's invitation to characterize the activity as merely the sale of cigarettes to Warpath on the Coeur d'Alene reservation. NWS's activities are far broader than

just sales to Warpath.[2] The activity at issue here extends beyond the borders of the reservation. Looking at NWS's activity as a whole, it cannot be characterized as an on-reservation activity. NWS is operated on the Seneca reservation in New York, but is organized under the laws of a separate tribe. It purchases cigarettes that are manufactured in Canada. It stores those cigarettes in a foreign trade zone in Nevada. It then ships those cigarettes from Nevada into Idaho. NWS's activities in this case are not limited to a single reservation, or even several reservations. Thus, we hold that NWS's importation of non-compliant cigarettes into Idaho is an off-reservation activity and is therefore not subject to a *Bracker* analysis. We affirm the decision of the district court that the State has subject matter jurisdiction to enforce the provisions of the MSAA and Complementary Act and prevent non-compliant cigarettes from being imported into Idaho.

## C. The State has personal jurisdiction over NWS.

NWS argues that the district court lacked personal jurisdiction over it because it did not have any contacts with the state of Idaho. We disagree. For an Idaho court to exercise personal jurisdiction over a non-resident defendant, the defendant's conduct must fall within Idaho's long-arm statute and exercising jurisdiction must comport with due process. *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 726, 152 P.3d 594, 597 (2007). "The transaction of any business within this state" provides the state with personal jurisdiction. I.C. § 5-514(a). To be subject to personal jurisdiction, the defendant's contacts with the state must have given rise to the litigation. *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 75, 803 P.2d 978, 981 (1990). Once those contacts are found, a court must also ensure that exercising jurisdiction comports with due process. A court looks at:

> (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*W. States Equip. Co. v. Am. Amex, Inc.*, 125 Idaho 155, 158-59, 868 P.2d 483, 486-87 (1994) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

NWS's importation of 100 million non-compliant cigarettes satisfies the requirements of Idaho's long-arm statute. NWS was conducting business in this state, even though it was selling

---

[2] It is important to note that neither Warpath nor the Coeur d'Alene tribe is a party to this lawsuit. Although NWS devoted a great deal of space in its briefing and time at oral argument arguing state infringement of tribal sovereignty on behalf of Warpath and the Coeur d'Alene tribe, those entities have not asserted any interest in this case.

only to Warpath. Likewise, conducting this business directly gave rise to this litigation. We find that Idaho's exercise of personal jurisdiction over NWS fully complies with due process. Therefore, we affirm the decision of the district court finding that NWS was subject to personal jurisdiction in this state.

## IV. CONCLUSION

We hold that NWS's sales to Warpath were exempt from state taxation and NWS is therefore not required to obtain a wholesale permit. We further hold that the State has subject matter jurisdiction over NWS's importation of non-compliant cigarettes into the state of Idaho, and that the State can validly exercise personal jurisdiction over NWS. Thus, we affirm in part, reverse in part, and remand to the district court with instructions to enter a new permanent injunction that complies with this opinion. As both parties prevail in part, we award no costs on appeal.

Chief Justice BURDICK, Justices EISMANN, J. JONES and Justice Pro Tem TROUT, **CONCUR**.